IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL A. MIRRA | : | |
| | : | CIVIL ACTION |
| v. | : | No. 13-1677 |
| | : | |
| DANIEL FYNES, et al. | : | |
| | : | |
| O'NEILL, J. | : | May 6, 2015 |

## MEMORANDUM

Presently before me is defendant Officer Daniel Fynes' partial motion for summary judgment (Dkt. No. 12) on plaintiff Samuel Mirra's claims of deliberate indifference to serious medical need under the Fourteenth Amendment (Count VI) and intentional infliction of emotional distress (IIED) under Pennsylvania law (Count IX) and plaintiff's response (Dkt. No. 13). For the following reasons I will grant defendant's motion in part and deny it in part.

## BACKGROUND

On May 23, 2011, plaintiff was pulled over by defendant, who is a police officer in the Darby Township Police Department. Dkt. No. 12-1 at 30:25-31:18. At the time plaintiff was transporting his son to school in his vehicle. Id. at 33:21-25. Defendant states he pulled plaintiff over for driving with a suspended license. Dkt. No. 12-2 at 16:4-18:13. Defendant testified he determined that there was a warrant for plaintiff's arrest and informed plaintiff he was being taken into custody. Id. at 19:17-20:18. Plaintiff exited his truck and defendant escorted him to the vehicle's rear. Id. at 20:21-22; Dkt. No. 12-1 at 40:21-41:18.

Defendant testified that plaintiff then suddenly fell sideways and struck his head, at which point defendant called for assistance and requested an ambulance respond to their location. Dkt. No. 12-2 at 21:5-11. Defendant states that plaintiff began to kick him and that plaintiff was combative but that he was taken into custody with the assistance of other officers.

1

Id. at 21:12-21.  Defendant then requested that the ambulance meet him at the police station instead of at the scene.  Id. at 29:13-30:2.  Paramedics were at the police station when defendant arrived with plaintiff.  Id. at 33:15-18.  Defendant states he informed the paramedics that plaintiff had fallen and hit his head.  Id. at 34:6-9.

Plaintiff offers a divergent view of the vents of May 23rd.  Plaintiff testified that after he exited his vehicle at defendant's request, he told defendant that he believed his license was not suspended and that defendant responded by cursing at him.  Dkt. No. 12-1 at 40:21-42:14.  Plaintiff states he responded to defendant by saying that "he wasn't going to talk to me how he talks to his wife" at which point defendant hit him with a closed fist on the left side of his head in the temple area and eye.  Id. at 42:14-16.  Plaintiff states he does not remember how many times he was hit, but that he fell backwards, went to the ground and covered himself.  Id. at 43:14-45:10.  He remembers waking up in the police station.  Id. at 46:23-24.

Plaintiff has presented evidence that he sustained a subdural hematoma, his left eye swelled shut, his forehead swelled over both his eyes, he had abrasions and cuts on various parts of his body and he had a hemorrhage of his left eye.  Dkt. No. 13-4 at ECF 2-3.  Plaintiff has adduced evidence he suffered intracranial bleeding and had evidence of brain injury.  Id. at ECF 2.  Plaintiff was treated by paramedics at the police station.  Dkt. No. 13-6.  Later, he was transported to Fitzgerald Mercy Hospital where he remained initially for five days and was later readmitted for an additional five days.  Dkt. No. 12-1 at 71:16-73:17; Dkt. No. 13-4 at ECF 2.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

> To establish "that a fact cannot be or is genuinely disputed," a party must:
>
>> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted). The Court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

**DISCUSSION**

**I.   Deliberate Indifference to Serious Medical Need**

Defendant argues he is entitled to summary judgment on plaintiff's deliberate indifference to serious medical need claim under 42 U.S.C. § 1983 and in the alternative that he is entitled to qualified immunity.  Dkt. No. 12 at ECF 11, 15.  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).  "Pre-trial detainees, for whom no adjudication of guilt has taken place yet, derive their right to medical care from the Fourteenth Amendment."  Olowu v. Schwank, No. 05-2085, 2005 WL 2077256, at *2 (E.D. Pa. Aug. 24, 2005), citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  "Nonetheless, courts addressing pre-trial detainees' claims of inadequate medical treatment have looked to the Eighth Amendment's standard for cruel and unusual punishment."  Olowu, 2005 WL 2077256, at *3, citing Hubbard v. Taylor, 399 F.3d 150, 165-66 (3d Cir. 2005).  "[T]he Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections."  Natale, 318 F.3d at 581, citing City of Revere, 463 U.S. at 244.

"In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by [ ] officials that indicate deliberate indifference to that need."  Natale, 318 F.3d at 582.  Regarding the first element, "[t]he Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person

4

would easily recognize the necessity for a doctor's attention"; or (3) one for which the "denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Stroud v. Boorstein, No. 10-3355, 2014 WL 2115499, at *8 (E.D. Pa. May 20, 2014), citing Atkinson v. Taylor, 316 F.3d 257, 272–73 (3d Cir. 2003). The "general rule is that where a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment." Glatts v. Lockett, No. 09-29, 2011 WL 772917, at *9 (W.D. Pa. Feb. 28, 2011).

Regarding the second element of acts or omissions indicating deliberate indifference, the Court of Appeals has "found deliberate indifference in situations where there was objective evidence that [a] plaintiff had serious need for medical care, and [ ] officials ignored that evidence" and where "necessary medical treatment [wa]s delayed for non-medical reasons." Natale, 318 F.3d at 582 (internal citations omitted). Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Id., citing Nicini v. Morra, 212 F.3d 798, 813 (3d Cir. 2000). Showing deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety" and that the official was "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . dr[e]w the inference." Natale, 318 F.3d at 582.

Defendant contends that the undisputed facts show he "did everything he should have done under the circumstances to have paramedics evaluate plaintiff" and he is therefore entitled to judgment as a matter of law. Dkt. No. 12 at ECF 13. Plaintiff argues that by requesting the paramedics meet them at the police station rather than at the scene, defendant made a "deliberately indifferent decision to deny medical attention to" plaintiff in order to cover "his

tracks and get[ ] his story together." Dkt. No. 13 at ECF 11.  Thus, plaintiff first opposes summary judgment on the grounds that there is a genuine issue of material fact as to whether defendant delayed his medical treatment for non-medical purposes, namely to give himself time to concoct a story of how plaintiff was injured.  Second, plaintiff argues that at the police station, the paramedics were "prevented" from examining plaintiff thoroughly and thus he was denied medical care.  The evidence plaintiff cites for this argument is the paramedics' report stating that they conducted a "[g]ross exam only, due to situation (per police pt had been acting out and had to be subdued on initial scene . . . ."  Id., citing Dkt. No. 13-6.

  First, there is no genuine issue of disputed material fact that defendant called paramedics to provide medical treatment to plaintiff.  Second, there is no evidence that directing the paramedics to the police station rather than the scene delayed plaintiff's medical treatment in a manner sufficient to constitute deliberate indifference to his serious medical need.  The paramedics were dispatched at 10:23 AM, arrived at the police station at 10:29 AM and began treating plaintiff at 10:37 AM.  Dkt. No. 13-6 at ECF 2.  On these undisputed facts, defendant was not deliberately indifferent to plaintiff's serious medical need as there is no evidence that defendant denied plaintiff adequate medical care or that defendant delayed his medical care in a manner consistent with "know[ing] of and disregard[ing] an excessive risk to [plaintiff's] health or safety."  Natale, 318 F.3d at 582.

  Second, there is genuine dispute as to whether that defendant prevented the paramedics from properly attending to plaintiff at the police station.  Plaintiff's citation of the paramedics' report stating they conducted a "gross exam only" due to the situation does not establish he received inadequate medical care or that defendant prevented the paramedics from providing him medical care.  Dkt. No. 13-6 at ECF 2.  Thus, I will grant defendant's motion for summary

judgment on plaintiff's claim of deliberate indifference to serious medical need and I need not address defendant's qualified immunity argument.

## II.     Intentional Infliction of Emotional Distress

Defendant contends that he is entitled to summary judgment on plaintiff's IIED claim (Count IX) because (1) plaintiff's own evidence regarding the alleged assault by defendant does not rise to the level of extreme or outrageous conduct and (2) plaintiff has offered no evidence establishing he sought treatment for emotional distress.  Dkt. No. 12 at ECF 21.  Plaintiff first responds that whether conduct arises to a level of extreme and outrageous conduct is a question of fact best left to the jury.  Second, plaintiff argues the evidence establishes that he was viciously assaulted and that satisfies the extreme and outrageous conduct requirement.   Third, plaintiff argues that the medical report of Dr. Reed Goldstein establishes that he suffers from anxiety, frustration, depression, emotional issues, despair and tension as a result of defendant's alleged assault on him.  Dkt. No. 13 at ECF 13, citing Dkt. No. 13-7.  "In order to state a claim for IIED in Pennsylvania, the plaintiff must establish four elements: (1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe." Walker v. N. Wales Borough, 395 F. Supp. 2d 219, 232 (E.D. Pa. 2005), citing Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979).

### A.     Outrageousness

As an initial matter, whether defendant assaulted plaintiff is a disputed issue of material fact.  Where "the Plaintiffs' injuries and the actions of all parties are in dispute, [ ] intentional infliction of emotional distress claims cannot be resolved by summary judgment." Johnson v. Sch. Dist. of Phila., No. 06-4826, 2008 WL 3927381, at *11 (E.D. Pa. Aug. 21, 2008).

However, defendant contends that even on the facts as they have been adduced by plaintiff, defendant's conduct does not constitute outrageous conduct as it is understood under Pennsylvania law.  Thus, I will proceed assuming the facts as plaintiff has testified to them, viewing the facts "in the light most favorable" to plaintiff and making "all reasonable inferences" in his favor to resolve whether he has provided sufficient evidence to permit a reasonable jury to conclude defendants' conduct was outrageous.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

"The tort of intentional infliction of emotional distress requires a showing that the defendant[ ] acted in a manner so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society."  McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005) (internal citations omitted).  Extreme and outrageous conduct is a "notoriously high standard and cases which have found a sufficient basis for the cause of action have presented only the most egregious conduct." Austin v. Hill, No. 11-2847, 2014 WL 1386338, at *12 (E.D. Pa. Apr. 9, 2014).  Examples of outrageousness sufficient to establish a claim of IIED include where "the defendant (1) hid the body of the plaintiffs' son after killing him in an automobile accident; (2) fabricated records suggesting that the plaintiff had killed a third party, and thereby caused him to be indicted for homicide; and (3) knowingly released falsified medical information to the press stating that the plaintiff suffered from a fatal disease."  Kreider v. Breault, No. 10-3205, 2012 WL 118326, at *7 (E.D. Pa. Jan. 13, 2012), citing Hoy v. Angelone, 720 A.2d 745, 753 n.10, 754 (Pa. 1998).

At the same time, "outrageousness occurs in Pennsylvania jurisprudence [ ] where the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  Wardlaw v.

Newsome, No. 08-2536, 2015 WL 1312028, at *4 (E.D. Pa. Mar. 23, 2015) (internal citations omitted). It is a high, but not an impossible standard to meet. For example, in Shultz v. Carlisle Police Dep't, 706 F. Supp. 2d 613, 628 (M.D. Pa. 2010), the Court denied the defendants' motion for summary judgment on the plaintiff's IIED claim where the defendant police officers "used extreme force to subdue a subject suffering from physical distress and not resisting officers' physical control" reasoning that a jury could find "such conduct goes beyond all bo[u]nds of human decency." Similarly, in Ehly v. City of Phila., No. 03-3634, 2004 WL 2644392, at *4 (E.D. Pa. Nov. 17, 2004), the Court denied summary judgment on an IIED claim because a "reasonable jury could find that" the police officer "intended to commit assault and intended to cause Plaintiff emotional distress when he restrained the handcuffed adolescent against a police car as his head was being slammed down by" another officer.

First, defendant is a police officer who "occupies a position of public trust . . . ." U.S. v. Brann, 990 F.2d 98, 103 (3d Cir. 1993). A jury might reasonably conclude that a physically unprovoked assault on a member of the community by a police officer during a traffic stop "constitutes an abuse of that trust" that is particularly outrageous. Id. Second, the claimed assault took place in the presence of plaintiff's son while he was being driven to school, which might lead a jury to conclude that defendant caused "extreme embarrassment and humiliation" by assaulting plaintiff. Madison v. Bethanna, Inc., No. 12-01330, 2012 WL 1867459, at *11 (E.D. Pa. May 23, 2012).

Third, plaintiff testified defendant punched him in the face without any physical provocation and that the punch was not a use of force effectuating the arrest. Thus, while generally "[a]n officer's behavior in effectuating an arrest may be sufficient to justify a finding that it was unreasonable and excessive while still not rising to the level of outrageousness

9

required to state a claim for IIED" the facts as testified to by plaintiff go beyond the bounds of merely an excessive use of force. This case is more analogous to those cases in which courts have denied defendants' motions for summary judgment on IIED claims because the plaintiff was "not resisting [the] officer's physical control" and yet "extreme force" was used by the officer. Shultz, 706 F. Supp. 2d at 628; see also Moser v. Bascelli, 865 F. Supp. 249, 253 (E.D. Pa. 1994) (denying motion to dismiss the plaintiff's IIED claims where it was alleged the defendant officer "cornered a traffic violator, and without cause or justification" shot him twice); Ehly, 2004 WL 2644392, at *4; Cf. Wardlaw v. Newsome, No. 08-2536, 2015 WL 1312028, at *4 (E.D. Pa. Mar. 23, 2015) (granting summary judgment for defendant officers because the "officer's alleged beating of" the plaintiff was not "beyond all possible bounds of decency" where the plaintiff refused to comply with orders and "resisted being handcuffed").

Fourth, the extent of plaintiff's injuries as a result of the assault might lead a reasonable jury to find defendant's conduct outrageous and the force used against him extreme. Plaintiff was hospitalized the day of the incident and has adduced evidence he suffered intracranial bleeding and that there was evidence of brain injury. Dkt. No. 13-4 at ECF 2. Indeed, plaintiff was hospitalized for five days starting on the day of the incident. Id. After being released, plaintiff was re-hospitalized and remained in the hospital an additional five days. Id. Plaintiff has presented evidence he sustained a subdural hematoma, that his left eye swelled shut, his forehead swelled over both his eyes, he had abrasions and cuts on various parts of his body and he had a hemorrhage of his left eye. Id. at ECF 2-3. Dr. Karten has opined that defendants' pattern of injuries is suggestive of trauma to various parts of his body rather than a simple fall, that he suffered significant blunt force to the head and that the medical evidence was consistent with an assault. Id. at ECF 3.

In short, an average member of the community might hear the totality of these facts as stated by plaintiff and exclaim "Outrageous!" Wardlaw, 2015 WL 1312028, at *4. Clearly, interpreting the facts in the light most favorable to plaintiff, defendant could have "intended to commit assault and intended to cause Plaintiff emotional distress" resulting in serious and permanent physical and emotional injury. Ehly, 2004 WL 2644392, at *4. I find that a jury could reasonably conclude that "such conduct is utterly intolerable in a civilized society." McGreevy, 413 F.3d at 371.

### B. Medical Evidence of Emotional Distress

Defendant also contends, however, that plaintiff has not supported his IIED claim with competent medical evidence. "[I]n Pennsylvania a claim for intentional infliction of emotional distress must be supported by competent medical evidence of the alleged mental injury." Kreider, 2012 WL 118326, at *7. Plaintiff has adduced evidence that in the opinion of Dr. Goldstein, based upon extensive review of medical records, testing and evaluation, plaintiff's "emotional deficits" associated with and traceable to the alleged assault by defendant "are likely permanent" and that his feelings of "despair, anxiety and frustration" are "consistent with a diagnosis of Adjustment Disorder with Mixed Anxiety and Depressive Mood" and a "Cognitive Disorder Not Otherwise Specified . . . ." Dkt. No. 13-7 at ECF 21-22. Dr. Goldstein's report is sufficient competent medical evidence to support plaintiff's alleged mental injury and to create a genuine issue of disputed material fact regarding the severity of his emotional distress. Thus, I will deny defendant's motion for summary judgment on plaintiff's IIED claim.

### CONCLUSION

For the reasons set forth above, I will grant defendant's motion for summary judgment on plaintiff's deliberate indifference to serious medical need claim and deny it on plaintiff's

intentional infliction of emotional distress claim.

    An appropriate Order follows.